52 Cal.App.4th 259 (1997)
JENNIE LORRAINE HUENS et al., Plaintiffs and Appellants,
v.
CYNTHIA KAY TATUM et al., Defendants and Respondents.
Docket No. C021900.
Court of Appeals of California, Third District.
January 27, 1997.
*261 COUNSEL
Thomas A. Ambrose for Plaintiffs and Appellants.
Mason & Thomas and Patrick J. Hehir for Defendants and Respondents.
OPINION
DAVIS, J.
In this case we hold that the 1992 amendment to Code of Civil Procedure section 473 (further unspecified statutory references are to this code), which provides for mandatory relief from "dismissal" resulting from attorney mistake, neglect or inadvertence, does not apply to a voluntary dismissal entered pursuant to a settlement agreement.
Plaintiff Jennie Lorraine Huens appeals from an order denying her section 473 motion to vacate a dismissal of defendant Cynthia Kay Tatum entered into as part of a settlement agreement with all defendants in the case. Shortly after the settlement was executed and the defendants dismissed, plaintiff's attorney discovered he had miscalculated the amount of insurance that was available. His section 473 motion to vacate the dismissal based on this "mistake" was denied. We affirm the trial court order.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff filed a complaint for personal injuries she sustained when her car was struck by a vehicle driven by defendant Cynthia Kay Tatum and owned by defendant Bonnie Boyd. Both plaintiff and Boyd had insurance coverage with United States Automobile Association (USAA). Boyd had a $50,000 policy on her vehicle. Defendant Tatum was insured by State Farm with $25,000 per person liability coverage.
After discovery was conducted but before trial, plaintiff received an offer to compromise pursuant to section 998, offering to pay Boyd's policy limit of $50,000. The offer was accepted, a release was signed, the money was paid and a voluntary dismissal of both defendants with prejudice was filed.
In the course of pursuing an underinsured motorist claim with USAA, plaintiff's attorney, Thomas Ambrose, discovered that Tatum's $25,000 *262 State Farm policy had been available as supplemental coverage for plaintiff's claim, contrary to his belief that Tatum's policy did not "stack" onto Boyd's. Plaintiff's underinsured motorist claim was denied because she had not exhausted all available insurance coverage.
Plaintiff then brought a motion for relief under section 473, seeking to set aside the voluntary dismissal as to Tatum only. The motion was supported by Ambrose's declaration citing his mistaken belief with respect to the availability of insurance coverage. The trial court denied the motion on the ground that "moving parties failed to show the reasonableness of the mistake and the justification for the lack of determination of the correct law...." This appeal ensues.

DISCUSSION
(1a) The focus of the trial court's order and much of respondent's brief is on the unreasonableness of the mistake relied upon by Ambrose to support his application for relief. Such was the inquiry under the traditional discretionary relief provision of section 473, which requires that the court assess "`the reasonableness of misconception and the justifiability of lack of determination of the correct law.'" (Hanooka v. Pivko (1994) 22 Cal. App.4th 1553, 1563 [28 Cal. Rptr.2d 70].)
Plaintiff does not however, place her reliance on the discretionary provision of section 473 but rather on its mandatory provision.[1] This portion of the statute, reads, in pertinent part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, italics added.)
(2) "Under this provision, a party is relieved from the consequences of his or her attorney's mistake, inadvertence, surprise, or neglect. Relief is available regardless of whether the attorney's neglect is excusable. [Citations.] Moreover, if the requirements of this provision are met, then relief is *263 mandatory. [Citations.]" (Lorenz v. Commercial Acceptance Ins. Co. (1995) 40 Cal. App.4th 981, 989 [47 Cal. Rptr.2d 362] (Lorenz), italics in second sentence added; see also Metropolitan Service Corp. v. Casa de Palms, Ltd. (1995) 31 Cal. App.4th 1481, 1487 [37 Cal. Rptr.2d 575] (Metropolitan); Todd v. Thrifty Corp. (1995) 34 Cal. App.4th 986, 991 [40 Cal. Rptr.2d 727].)
Enacted in 1988, the attorney affidavit provision of section 473 originally applied only to defaults. Its purpose was "to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits." (Metropolitan, supra, 31 Cal. App.4th at p. 1487.) In the words of the author "`Clients who have done nothing wrong are often denied the opportunity to defend themselves, simply because of the mistake or inadvertence of their attorneys in meeting filing deadlines.'" (Letter of Sept. 14, 1988, from Sen. Ed Davis to Governor George Deukmejian re: Sen. Bill No. 1975, quoted in Cisneros v. Vueve (1995) 37 Cal. App.4th 906, 911 [44 Cal. Rptr.2d 682].)
In 1992, the attorney affidavit provision was extended to provide mandatory relief from dismissals as well as defaults. The change was considered to be among the "`[n]oncontroversial proposals ...'" contained in an omnibus civil practice bill. The State Bar, which sponsored the amendment, argued that "`it is illogical and arbitrary to allow mandatory relief for defendants when a default judgment has been entered ... and not to provide comparable relief to plaintiffs whose cases are dismissed for the same reason.'" (Peltier v. McCloud River R.R. Co. (1995) 34 Cal. App.4th 1809, 1820, [41 Cal. Rptr.2d 182], citing Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3296 (1991-1992 Reg. Sess.) as amended May 4, 1992.)
Although the statute on its face affords relief from unspecified "dismissal" caused by attorney neglect, our courts have, through judicial construction, prevented it from being used indiscriminately by plaintiffs' attorneys as a "perfect escape hatch" (Graham v. Beers (1994) 30 Cal. App.4th 1656, 1661 [36 Cal. Rptr.2d 765]) to undo dismissals of civil cases. Thus it has been held that the provision does not apply to dismissals under section 583.410 for delay in prosecution of the action because virtually all such dismissals are attorney caused and such a construction would result in a disfavored repeal of the discretionary dismissal statute by implication. (Ibid.; Peltier v. McCloud River R.R. Co., supra, 34 Cal. App.4th at p. 1824.) Mandatory relief is not available after a summary judgment or judgment after trial, which involve actual litigation and adjudication on the merits. (Lorenz, supra, 40 Cal. App.4th at p. 990, citing Ayala v. Southwest Leasing & Rental, Inc. *264 (1992) 7 Cal. App.4th 40, 44 [8 Cal. Rptr.2d 637].) Nor may it be used to circumvent the statute of limitations, whose rigid enforcement is backed by venerable and long-lasting public policy considerations. (Castro v. Sacramento County Fire Protection Dist. (1996) 47 Cal. App.4th 927 [55 Cal. Rptr.2d 193].)
Against this background and history, the question of whether the mandatory provision of section 473 was intended to cover voluntary dismissals is not a difficult one.
(3) "In interpreting the language of a statute, we first turn to the words themselves." (Gikas v. Zolin (1993) 6 Cal.4th 841, 854 [25 Cal. Rptr.2d 500, 863 P.2d 745].) If the "statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citations.]" (People v. Overstreet (1986) 42 Cal.3d 891, 895 [231 Cal. Rptr. 213, 726 P.2d 1288].)
(1b) In relevant part, the section 473 provides that, upon the filing of an attorney affidavit meeting its requirements, "the court shall ... vacate any ... dismissal entered against his or her client," unless the court finds the dismissal was not in fact caused by the attorney. (Italics added.) The statute's use of the word "against" limits the class of targeted dismissals and makes clear that only involuntary dismissals are affected.
This conclusion is consistent with the narrow view of the Legislature's intent which appellate courts have taken, i.e., that the section's purpose was simply "to put plaintiffs whose cases are dismissed for failing to respond to a dismissal motion on the same footing with defendants who are defaulted for failing to respond to an action." (Peltier v. McCloud River R.R. Co., supra, 34 Cal. App.4th at p. 1824, citing Graham v. Beers, supra, 30 Cal. App.4th at p. 1661; Tustin Plaza Partnership v. Wehage (1994) 27 Cal. App.4th 1557, 1565-1566 [33 Cal. Rptr.2d 366].) The purpose of the statute was to alleviate the hardship on parties who lose their day in court due solely to an inexcusable failure to act on the part of their attorneys. There is no evidence the amendment was intended to be a catch-all remedy for every case of poor judgment on the part of counsel which results in dismissal.
A voluntary dismissal which typically follows a personal injury settlement is particularly unamenable to section 473 relief for another compelling reason. Settlements are contracts. To set them aside, one must present contractual grounds for rescission  fraud, mutual mistake, coercion, etc. (Civ. Code, § 1689, subd. (b).) Applying section 473 in the manner suggested here would constitute a serious intrusion into contract law by allowing a party to escape the consequences of his agreement upon the mere *265 affidavit of his attorney that he had made an inexcusable error concerning the applicable facts or law. It would also undermine our strong public policy in favor of settlements. (Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian (1990) 218 Cal. App.3d 1058, 1076 [267 Cal. Rptr. 457]; see generally In re Marriage of Hasso (1991) 229 Cal. App.3d 1174, 1184 [280 Cal. Rptr. 919].) We believe the Legislature did not intend such drastic consequences to flow from such a "noncontroversial" amendment.
We conclude that the mandatory "attorney affidavit" provisions of section 473 cannot be used to set aside a voluntary dismissal executed pursuant to a settlement. And because there can be no serious dispute that counsel's mistake in failing to ascertain the correct amount of insurance was inexcusable, discretionary relief under section 473 was also unavailable.

DISPOSITION
The order appealed from is affirmed.
Morrison, J., concurred.
BLEASE, Acting P.J., Concurring.
I concur in the judgment. I write separately to make a grammatical point.
At issue is the application of the 1992 amendment to subdivision (b) of Code of Civil Procedure section 473 to a voluntary dismissal of the case by the plaintiff. The amendment added the term "dismissal" in pertinent part as follows: "Notwithstanding any other requirements of this section, the court shall [upon application and the attorney's affidavit attesting to his or her mistake etc.], vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Italics added.)
The majority reason that the "use of the word `against' [in the phrase "dismissal entered against his or her client"] limits the class of targeted dismissals and makes clear that only involuntary dismissals are affected." (Maj. opn., ante, at p. 264, original italics.) The argument suffers a grammatical defect.
A voluntary dismissal is "entered against" the client notwithstanding that it is agreed to by the client. However, other language of general application in Code of Civil Procedure section 473 comes to the aid of the argument. It *266 provides that "[t]he court may ... relieve a party ... from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (Italics added.) The active verb "taken," unlike the term "entered," implies that the adverse action must be involuntary. Since the provision at issue is an exception to this general rule and thereby embraces it, I agree that the exception does not apply to a voluntary dismissal.
I also read the majority opinion as consistent with this court's decision in Peltier v. McCloud River R.R. Co. (1995) 34 Cal. App.4th 1809 [41 Cal. Rptr.2d 182], which concludes that the relief afforded a dismissed plaintiff by the 1992 amendment is comparable to the relief afforded a defaulting defendant. Implicit in this conclusion is that the term "default" in the phrase "default judgment or dismissal" modifies "dismissal" as well as "judgment."
NOTES
[1] The fact that the trial court failed to apply the mandatory provision of section 473 in deciding the motion is of no consequence here. We review the judgment, not the reasoning of the lower court. A decision correct under applicable law will not be disturbed merely because it was rendered for a wrong reason. (Belair v. Riverside County Flood Control Dist. (1988) 47 Cal.3d 550, 568 [253 Cal. Rptr. 693, 764 P.2d 1070].)